SO ORDERED.

Dated: August 22, 2016

Daniel P. Collins, Chief Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 13 Proceedings |
| **MICHAEL GORDON HALSAM**, | Case No.: 2:14-bk-15861-DPC |
| Debtor. | Adversary No. 2:15-ap-00068-DPC |
| **MAYO CLINIC**, | **UNDER ADVISEMENT ORDER** |
| Plaintiff, | |
| v. | |
| **MICHAEL GORDON HALSAM**, | |
| Defendant. | |

Mayo Clinic ("Plaintiff") filed this adversary proceeding seeking a judgment of this Court holding Plaintiff's claims against Michael Halsam ("Debtor") nondischargeable under 11 U.S.C. § 523(a)(4)[1]. For the reasons stated below, the Court holds that Plaintiff's claim is nondischargeable in this Chapter 13 proceeding.

**I.  Procedural History**

  A.  State Court Proceedings

On December 21, 2012, Plaintiff filed a lawsuit against Debtor in the Arizona Superior Court, Maricopa County (CV2012-018484) ("State Court Action") claiming breach of contract, conversion, fraud, and unjust enrichment. Plaintiff sought damages in the amount of $199,557.02 claimed owing to Plaintiff for healthcare services provided by

---

[1] Unless otherwise indicated, all Chapter, Section, and Rule references are to the Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

1

Plaintiff to Debtor (See Adversary Proceeding Docket Entry ("DE") 47 and Trial Exhibit ("Ex") 5). Plaintiff claimed Debtor assigned insurance proceeds to Plaintiff but that Debtor retained $155,304.86 paid directly to him by Blue Cross Blue Shield ("BCBS") (Ex 5). Plaintiff claimed Debtor's retention of these insurance proceeds constituted a conversion of those funds and fraud under Arizona's Uniform Fraudulent Transfers Act (Ex 5). Plaintiff moved for summary judgment in the State Court Action. On September 17, 2014, the Superior Court granted Plaintiff's Motion, stating:

> In this Case, the Court finds that there are no material facts in dispute. Defendant was a patient at the Mayo Clinic and received treatment. Defendant owes Mayo Clinic for those services. Defendant received directly from his insurance provider over $155,000.00 and instead of paying Mayo Clinic as agreed, Defendant simply pocketed the money. Defendant claims that he was overcharged and/or that he had an agreement to pay less. The Court finds that no such facts were presented and that no such agreement existed and that Defendant owes the full amount.

(See Plaintiff's Motion for Summary Judgment (DEs 22-25) and Exhibit M attached to DE 25).

During Plaintiff's State Court Action against Debtor, Debtor claimed in his answer (Ex 6, ¶ 8) that Plaintiff was not deprived of funds to which it was entitled. In his subsequent discovery responses Debtor claims he had not spent or otherwise utilized the $155,305.86 of insurance proceeds sent to him by BCBS (Ex 3, ¶ 6).

B. <u>Bankruptcy Proceedings</u>

On October 21, 2014, Debtor filed this bankruptcy. On January 30, 2015, Plaintiff brought this adversary proceeding seeking a judgment of this Court finding Debtor's obligations to Plaintiff nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4) (DE 1). On March, 30, 2015, Debtor filed his Answer and Counterclaim (DE 6) but later acknowledged his counterclaims were barred by applicable statutes of limitation and should be dismissed (DE 39). On January 29, 2016, Plaintiff filed a motion for summary judgment (DE 22-25). Debtor objected claiming that, while he owed money to Plaintiff,

that obligation was dischargeable because (1) his insurance assignment to Plaintiff was not absolute, (2) he owned the insurance proceeds when he received them, and (3) there are no circumstances indicating fraud in connection with Debtor's debtor-creditor relationship with Plaintiff (DE 30-32).

The Court denied Plaintiff's motion for summary judgment, but found Plaintiff satisfied two of the three factors established by the 9th Circuit B.A.P. in *In re Wada*, 210 B.R. 572 (9th Cir. BAP 1997) to prove embezzlement under 11 U.S.C. § 523(a)(4). (DE 44). The Court found the *Wada* factors satisfied were: (1) the property was rightfully in possession of a non-owner, and (2) the non-owner appropriated the property to a use other than which he was entrusted (DE 44). The Court determined it could not resolve the third *Wada* factor (circumstances indicating fraud) without conducting a trial on that element of the embezzlement claim.

The parties filed their Joint Pretrial Statement on June 13, 2016 (DE 47). The Court held a trial on June 20, 2016, and subsequently took this matter under advisement on June 20, 2016 (DE 48). At trial, Plaintiff withdrew its § 523(a)(2)(A) claims (Count I), as well as that portion of § 523(a)(4) pertaining to "fraud or defalcation" while acting in a fiduciary capacity (Count II).

## II. **Stipulated Facts and Facts Not Contested at Trial**

Debtor is a single man who is in private practice as a chiropractor (DE 48). He received medical care from Plaintiff on or about September 30, 2011 through Dec 30, 2011 for heart related issues. (DE 47, ¶ 1 and DE 48.) As a prerequisite to receiving health care goods and services, Debtor signed an Authorization and Services Terms Agreement ("ASTA"), the terms of which assign to Plaintiff any health insurance benefits he was entitled to for the health care he received from Plaintiff. (Ex 2.) Under the ASTA, Debtor also promised to immediately forward to Plaintiff all health insurance payments he received for the services provided to him by Plaintiff (Id.) The total expense of the

3

Case 2:15-ap-00068-DPC    Doc 52    Filed 08/22/16    Entered 08/22/16 12:05:23    Desc
Main Document    Page 3 of 8

healthcare services provided to Debtor by Plaintiff was $199,557.02 (DE 47, ¶ 2). BCBS provided Debtor $155,305.02 to pay towards this bill (DE 47, ¶¶ 4 and 5).

### III. The Trial

In his testimony at trial, Debtor admitted to being familiar with the type of insurance arrangement described in the ASTA due to his experience as a healthcare professional (DE 48). He also admitted at trial that he used the insurance money received from BCBS for his own personal and business expenses, but that he planned to eventually pay it back to Plaintiff (DE 48).

Contrary to Debtor's responses in the State Court Action, his discovery responses in this bankruptcy indicate that he had deposited, transferred, and spent the entirety of the insurance proceeds by August 2012 (Ex 4, ¶ 6). This was six months before Debtor's answer in the State Court Action and almost one year before Debtor's discovery responses in the State Court Action. Debtor claimed to have spent the money because he was deep in personal and business debt because he was supporting himself, his girlfriend, and her children (DE 48). Debtor testified that he intended to eventually pay the BCBS insurance proceeds to Plaintiff (DE 48).

Plaintiff claims that circumstances indicating fraud exist and that Plaintiff is entitled to a nondischargeable judgment for $149,953.15 of the $155,304.86 of insurance proceeds paid directly to Debtor by BCBS (DE 47, ¶ 7).

### IV. Issue

Did Debtor have the requisite intent to support a finding by this Court that there were circumstances indicating fraud in connection with Debtor's relationship with Plaintiff?

\ \ \

\ \ \

### V. Analysis

A.  <u>Burden of Proof</u>

As with all actions under § 523, Plaintiff bears the burden of proof by a preponderance of the evidence on its § 523(a)(4) claims. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S. Ct. 654, 659 (1991).

B.  <u>Law</u>

The portion of 11 U.S.C. § 523(a)(4) relevant to Plaintiff's remaining claim against Defendant (Count III) states:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
> (4) for . . . embezzlement . . . .

While an underlying policy of the Code is to grant a "fresh start" to individual debtors, that "opportunity for a completely unencumbered new beginning [is meant for] the 'honest but unfortunate debtor'." *Id.* quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S. Ct, 695, 699 (1934).

The parties agree that, in the context of nondischargeability, "embezzlement" requires the presence of three elements:

1. Property rightfully in the possession of a non-owner;
2. Non-owners' appropriation of the property to a use other than which it was entrusted; and
3. Circumstances indicating fraud.

*In re Wada*, 210 B.R. 572 (9th Cir. BAP 1997). See also *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991).

In addressing the third *Wada* factor, Retired Bankruptcy Judge Sarah Sharer Curley held that, "'[c]ircumstances indicating fraud' can be situations where the debtor intended to conceal the misappropriation . . . . Embezzlement does not require the existence of a fiduciary relationship." *In re Campbell*, 490 B.R. 390, 402 (Bankr. D. Ariz. 2013) (internal citations omitted).

5

Case 2:15-ap-00068-DPC    Doc 52    Filed 08/22/16    Entered 08/22/16 12:05:23    Desc
Main Document    Page 5 of 8

Other courts have held that a debtor's intent to pay back the money she or he does not own, does not negate the intent to defraud. *See Savonarola v. Beran*, 79 B.R. 493, 496 (Bankr. N.D. Fla. 1987) (Desire to only temporarily deprive creditor of their property "does not eliminate the inference of intent."); *In re Bevilacqua*, 53 B.R. 331, 334 (Bankr. S.D.N.Y. 1985) (holding that even though Debtor intended to use the funds only temporarily, Plaintiff was deprived of his property and the resulting conversion constitutes embezzlement for purposes of section 523(a)(4)); *Matter of Shuler*, 21 B.R. 643, 644 (Bankr. D. Idaho 1982) ("The fact that the intent is to deprive the rightful owner of the funds only temporarily and not permanently . . . does not eliminate the element of intent. For example, in the context of criminal embezzlement, the intention to restore the property is neither a defense to nor negation of the embezzlement. The embezzlement has occurred and the intent to later restore may only be considered in mitigation of punishment.")

## VI. Discussion

In its ruling on Plaintiff's Motion for Summary Judgment, this Court previously found that the first two *Wada* elements of embezzlement were satisfied, but ordered the third factor be decided at trial (DE 44). The third and final prong of the *Wada* embezzlement test requires a finding of circumstances indicating fraud. This, however, is not to say the Plaintiff must satisfy all elements of a fraud claim. Of course, a full blown fraud case would be properly pursued under § 523(a)(2).

The Court now finds that Debtor attempted to conceal from Plaintiff the fact that he had misappropriated the BCBS insurance proceeds which he knew were owned by Plaintiff. This is evidenced by his answer in the State Court Action where he denied willfully having used the insurance funds belonging to Plaintiff and in his response to the Plaintiff's requests for admission where he denies having spent or otherwise utilized the funds for his own use. At trial in this Court, Debtor now admits to utilizing the BCBS insurance funds for his own personal use and use in his business, instead of rightly paying

them to Plaintiff. Although Debtor was forthcoming in this particular proceeding, the Court finds that circumstances indicating fraud exist because Debtor used Plaintiff's money that did not belong to him. The Court finds clear circumstances indicating fraud in Debtor's dealings with Plaintiff.

Debtor knew that the money he received from BCBS belonged to Plaintiff. He signed the ASTA acknowledging this fact. He is a chiropractor who knew what signing the ASTA meant. Fully aware of his contractual obligation to pay Plaintiff the money he received from BCBS, Debtor spent the money on his own personal and business expenses. Although Debtor claims he was planning on paying the money back (*See* DE 48), this Court agrees with cases cited above to the effect that such intent does not negate a finding of circumstances indicating fraud. *See Savonarola v. Beran*, 79 B.R. 493, 496 (Bankr. N.D. Fla. 1987)*; In re Hoffman*, 70 B.R. 155, 163–64 (Bankr. W.D. Ark. 1986); *In re Bevilacqua*, 53 B.R. 331, 334 (Bankr. S.D.N.Y. 1985); *Matter of Shuler*, 21 B.R. 643, 644 (Bankr. D. Idaho 1982). Moreover, having carefully observed Debtor at trial and having carefully listened to his testimony, this Court finds Debtor's testimony to not be credible. Rather, the Court finds Debtor never intended to pay any portion of the BCBS funds to Plaintiff.

Based on the facts presented at trial, this Court finds circumstances indicating fraud existed in regard to Debtor's actions concerns Plaintiff's health insurance proceeds. The Court further finds the Debtor retained $149,943.40 of insurance funds owned by Plaintiff.

\ \ \

\ \ \

## VII. Conclusion

The Court finds Plaintiff has sustained its burden of proof concerning Debtor's embezzlement of BCBS insurance proceeds received by Debtor but owned by Plaintiff. All three elements of the *Wada* test have been satisfied by Plaintiff. Plaintiff's claims

against Debtor are nondischargeable pursuant to 11 U.S.C. § 523(a)(4). In connection with this claim, Plaintiff has sustained damages in the amount of $149,953.15.

The Court will enter judgment in favor of Plaintiff and against Debtor declaring nondischargeable its claims against Debtor in the amount of $149,953.15. Plaintiff is hereby directed to lodge a form of judgment consistent with this Court's Under Advisement Order.

**DATED AND SIGNED ABOVE.**

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to interested parties.